* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All Parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All Parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of Parties.
3. On the date of injury, the Parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the Parties.
5. Isurity Insurance Service was the compensation carrier on the risk.
6. Plaintiff's date of injury is July 27, 2005.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before Deputy Commissioner Holmes, plaintiff was eighteen (18) years old. Plaintiff worked for defendant-employer for several months prior to July 27, 2005 installing drywall. On July 17, 2005, plaintiff was involved in a motor vehicle accident resulting in an injury to his back and neck resulting in C6, C7, T1 fracture with quadriplegia.
2. On or about July 27, 2005, plaintiff was working as a drywaller for Jose Carranza Drywall. At the time of the accident, plaintiff earned $600.00 per week. Plaintiff was to pick up co-workers in Raleigh, North Carolina in a truck owned by defendant-employer to drive the co-workers to a job site in Fayetteville, North Carolina. *Page 3 
3. While traveling on Interstate 95 to Fayetteville, North Carolina, three employees, including the driver, plaintiff, sat in the front seat and two employees sat in the rear seat of the truck. During the trip, all employees fell asleep except plaintiff, who was driving, and Orlando Martinez Rodriguez, the employee who was sitting beside plaintiff.
4. As he was driving, plaintiff intentionally began swerving the vehicle across rumble strips, and on and off the highway.
5. Co-worker Juan Hernandez Martinez woke up and told plaintiff to stop. Plaintiff responded by asking, "Are you afraid of dying?"
6. Another co-employee, Orlando Martinez, who had given a recorded statement that was stipulated into evidence, corroborated Juan Hernandez's recollection of the events within the truck just prior to the accident.
7. The highway patrolman who investigated the accident confirmed that plaintiff was driving and jerking his vehicle on and off the rumble strips and outside the normal lanes of travel.
8. Plaintiff lost control of the vehicle, which left the highway and flipped over several times.
9. One employee was killed in the car accident and others, including plaintiff, were injured. Plaintiff sustained fractures to C6, C7 and T1 which resulted in quadriplegia.
10. Plaintiff was seventeen (17) years old at the time of the incident and eighteen (18) years old at the time of the hearing.
11. Defendants denied plaintiff's claim but have paid medical expenses of plaintiff without prejudice including expenses for wheelchairs and other needs of plaintiff through December 31, 2005. *Page 4 
12. On July 27, 2005, plaintiff had been specifically instructed by his employer to pick up drywall laborers early in the morning for purposes of transporting the same to the job site that day in Fayetteville, North Carolina.
13. The employer and owner of Jose Carranza Drywall, for whom plaintiff was working on the date of the accident, was aware that plaintiff was driving the company truck on the date in question without a driver's license, as well as the fact that plaintiff had a history of having received traffic citations for speeding and driving without an operator's license.
14. On the date of the accident, there is no evidence that there were any disputes among the occupants of the vehicle driven by plaintiff. On that date, plaintiff was having no personal problems and did not seem angry or upset with anyone.
15. As above described, at some point during the drive to the work site, the passengers in the back seat fell asleep. Plaintiff drove the truck on the side of the road and across the rumble strips on I-95 to "jokingly" wake up the passengers in the back seat.
16. There is insufficient evidence that plaintiff intended to injure himself or any of the other occupants of the vehicle he was driving.
17. Neither plaintiff nor any of the passengers were using seatbelts at the time of the accident. Plaintiff's failure to use a seatbelt was not a violation of a work rule of the employer, nor was it a proximate cause of the motor vehicle accident.
18. Prior to this time, plaintiff was healthy and had no difficulty with paralysis or any other significant medical problems.
19. As a result of losing control of the company vehicle while en route carrying passengers on behalf of the employer to the work site, plaintiff suffered a spinal cord injury which is totally debilitating. He has no practical use of his legs and has extremely limited use of *Page 5 
his upper extremities, particularly in the hands. For example, he cannot bathe, change his diapers, feed, or dress himself. All these tasks have to be performed by someone else on his behalf. His condition is such that he is incontinent. He must be catherized by others in order to use the bathroom for purposes of urination, as he cannot perform this task himself.
20. Dr. Patrick J. O'Brien is plaintiff's treating physician and is well-qualified to direct his medical care in the future.
21. In his deposition, Dr. O'Brien provided testimony, and the undersigned finds as fact, that plaintiff is at increased risk of infection and premature death if treatment is further delayed.
22. Although defendant-carrier provided medical care for a time following the accident, the carrier terminated this in December 2005. Except when hospitalized, attendant care has never been provided by defendants.
23. Since defendants' termination of plaintiff's medical benefits, plaintiff has suffered recurrent infections and an episode of pneumonia requiring emergency room treatment.
24. Plaintiff's needs are such that he requires twenty four (24) hour attendant care at the Certified Nurse Aide (CNA) II skill level supervised by a Registered Nurse (RN), as set forth in the life care plan prepared by Stephen D. Carpenter, M. Ed, CRC, CDMS, CCM, MES, and approved by plaintiff's treating physician, Dr. Patrick J. O'Brien. Among other reasons plaintiff needs twenty-four (24) hour attendant care and constant supervision is to lessen the chances of developing urinary or upper respiratory tract infections as people with this particular injury are prone to do.
25. Except for the occasions during which plaintiff was hospitalized, his attendant care since the date of the accident has been provided by friends, family members, and plaintiff's *Page 6 
girlfriend twenty-four (24) hours per day, seven (7) days per week. This includes travel to and from Georgia and care provided there as a result of plaintiff's injuries. The reasonable value of this attendant care is $15.00 per hour.
26. The needs of plaintiff as set forth in the life care plan developed by Stephen D. Carpenter and approved by Plaintiff's treating physician, Dr. Patrick J. O'Brien, are reasonable and necessary to give plaintiff relief from symptoms associated with his work-related injury.
27. Preparation of a life care plan and the attendant costs of preparation were reasonable and necessary to identify and provide for the many needs of this catastrophically-injured employee to ensure appropriate treatment and care are provided to give needed relief from symptoms associated with plaintiff's injuries and to prevent further deterioration in his condition.
28. Plaintiff's current physical condition, including his C5 quadriplegia, partial paralysis of upper extremities, and paralysis of lower extremities was sustained while providing transportation to employees of his employer and while traveling to a work site in a company-owned vehicle in the course and scope of his employment with defendant-employer.
29. Plaintiff's injuries and resulting total disability were not in any way caused by any intent on the part of plaintiff to injure himself or others.
30. Plaintiff has reached maximum medical improvement.
31. Plaintiff is permanently and totally disabled from all competitive employment and will require lifetime medical and attendant care, prescription medications, transportation, housing, and other services identified in the life care plan. *Page 7 
32. Defendants' argument that plaintiff displayed an intent to cause harm to himself or others and therefore plaintiff's claim should be barred by the provisions set forth in N.C. Gen. Stat. § 97-12 has no merit.
33. Defendants also argue that when plaintiff began to intentionally jerk his vehicle on and off the highway, his actions were no longer connected with his employment and therefore did not arise out of the employment, nor were his actions and resulting accident a risk incident to his employment. This injury was the result of the horseplay of a 17 year old driver while performing his job duties. Plaintiff was still acting for the benefit of his employer at the time of the accident.
34. Defendants denied this claim without reasonable ground, and their actions in this matter constitute stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 27, 2005, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment which resulted in C5 quadriplegia. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury by accident, he is permanently and totally disabled and entitled to weekly compensation beginning July 28, 2005 at the rate of $400.00 per week for the remainder of his life or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29. *Page 8 
3. Plaintiff is entitled to reasonable and necessary medical, psychiatric, nursing, and rehabilitative expenses, medications, sick travel, housing, transportation, and other treatment and rehabilitative services, including those identified in the life care plan approved by Dr. O'Brien in his deposition, for the remainder of plaintiff's life or until further Order of the Industrial Commission. N.C. Gen. Stat. §§97-2((19) and 97-25.
4. Dr. Patrick J. O'Brien is designated plaintiff's authorized treating physician for the management and direction of his medical and rehabilitative care. N.C. Gen. Stat. § 97-25.
5. An attorney's fee in the amount of twenty-five percent (25%) of the entirety of Plaintiff's past due and future indemnity benefits is reasonable in this claim.
6. As defendant's actions in the course of litigation of this case constitute stubborn, unfounded litigiousness, defendant is responsible for payment of plaintiff's attorney's fees. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation in the amount of $400.00 per week beginning July 28, 2005 and continuing for the remainder of plaintiff's lifetime. All accrued benefits shall, subject to an attorney provided below, be paid directly to plaintiff in a lump sum.
2. An attorney fee of 25% of all disability compensation paid to Plaintiff in paragraph one of this Award is approved for plaintiff's attorneys. Of the accrued amount, the defendants shall deduct 25% and send directly to plaintiff's attorneys. Said amount shall be *Page 9 
divided so that each of plaintiff's attorneys receives one-third of said amount. Of the continuing disability compensation every fourth compensation check for plaintiff's lifetime shall be sent to plaintiff's attorneys and each attorney shall receive one-third of said compensation check.
3. Defendants shall pay all medical and rehabilitative expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident of July 27, 2005 for so long as said treatment effects a cure or gives plaintiff relief. This includes payment for treatment provided by Dr. O'Brien.
4. Dr. O'Brien is approved as plaintiff's treating physician.
5. Defendants shall pay to plaintiff for reimbursment of twenty-four hour, seven day per week family-provided attendant care the sum of $15.00 per hour, subject to a credit for any days for which defendants provide records to show that plaintiff was in a facility which provided attendant care. Once calculated, these funds shall be paid into the trust account of Philip A. Collins, one of plaintiff's attorneys, to be disbursed by him pro rata among the parties providing the services.
6. Immediately after entry of this Opinion and Award, defendants shall provide the care described in the life care plan approved and prescribed as medically necessary by Dr. O'Brien. Defendants shall also pay for the preparation of said life care plan.
7. Plaintiff's attorneys shall provide an accounting of time in the pursuit of this claim to the Full Commission for entry of an appropriate attorney's fee award for defendants' stubborn, unfounded litigiousness pursuant to N.C. Gen. Stat. § 97-88.1.
7. Defendants shall pay the costs, including an expert witness fee to Dr. Patrick O'Brien of $450.00.
 This the ___ day of February, 2007. *Page 10 
S/__________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/__________________ BERNADINE S. BALLANCE COMMISSIONER
S/__________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1